## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: ) | |
| ) | CHAPTER 7 |
| American Bridge Products Inc. ) | Case No. 96-16620 JNF |
| ) | |
| Debtor ) | |
| ) | |
| Lynne F. Riley, Chapter 7 Trustee ) | |
| American Bridge Products Inc., ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Adversary Proceeding |
| Nicholas J. Decoulos, Esq., Helen ) | No. |
| Decoulos, as beneficiary of the ) | |
| Willowdale Realty Trust, and ) | |
| Peter and Paul Decoulos, as joint ) | |
| Trustees of the Willowdale ) | |
| Realty Trust, ) | |
| Defendants. ) | |

## MEMORANDUM OF LAW IN SUPPORT OF TRUSTEE'S MOTION FOR PRELIMINARY INJUNCTION

### I.      BACKGROUND

On June 29, 2005, this Court entered a Judgment, in Adversary Proceeding No.

00-1142, against Nicholas J. Decoulos ("Decoulos") in the amount of $379,173.78.[1]

Including both pre and post judgment interest, the Trustee calculates the payoff amount

for the Judgment is now approximately $750,000.[2]  Decoulos, claiming he has no assets,

---

[1] See Riley Affidavit ¶ 2.
[2] On October 11, 2005, this Court amended the judgment to include pre-judgment interest, calculated from the date the Trustee filed the complaint in Proceeding No. 00-1142. Eight years have since elapsed—pre- and post judgment interest would make the judgment closer to $750,000.  See Riley Affidavit ¶ 3.  On October 18, 2005, Decoulos filed an appeal with the United States District Court, which is still pending. See Riley Affidavit ¶ 4.

1

has not satisfied the Judgment against him.[3]  However, the plaintiff, Chapter 7 Trustee

Lynne F. Riley ("Trustee") has discovered a cash-producing realty trust,[4] that Decoulos

funded, controls, treats as his own, benefits from and holds in his wife's name.[5]  In this

action, the Trustee seeks to freeze the corpus of the realty trust to enforce the Judgment.

The Trustee has filed a Complaint and this Motion for Preliminary Injunction.  In her

Complaint, the Trustee seeks an order that the Willowdale Realty Trust ("Willowdale

Trust" or "Trust") is in fact owned by Decoulos and to reach and apply Decoulos' interest

in the Trust to satisfy the Judgment.  The Motion for Preliminary Injunction seeks to

ensure that Decoulos and the other defendants Helen, Peter and Paul Decoulos, do not

transfer the Trust *res* to a third party pending a final decision.  Specifically, the Trustee

moves this Court to issue a preliminary injunction preventing the defendants from

distributing, disbursing, encumbering, wasting, alienating or otherwise divesting any

interest in the Willowdale Trust to any third party.  In further support of her Motion, the

Trustee has filed this Memorandum, her own Affidavit, and the Affidavit of Kristen

Stathis (with attachments).

Decoulos lives in Peabody, Massachusetts and married the defendant Helen Decoulos

("Helen") in 1954.[6]  From the time they married to the present, Decoulos has worked as a

lawyer and Helen has not held an income-generating job.[7]  In the late 1950s, Helen and

Decoulos jointly owned a home in Peabody.[8]  Decoulos purchased that family home

---

[3] See Riley Affidavit ¶ 2- 5.
[4] The name of the trust is Willowdale Realty Trust.  In 2006, Willowdale Realty Trust generated $295,616.00 in income; in 2005, $174,217.00; and in 2004, $125,880.00.  See Stathis Affidavit, Tabs E, F, and G.
[5] See Riley Affidavit ¶ 2-5.
[6] See Stathis Affidavit, Tab H, at page 3-5..
[7] See Stathis Affidavit, Tab H, at page 101; Tab M, at page 11.
[8] See Stathis Affidavit, Tab H, at page 102.

using money that Decoulos generated from his law practice.[9]  The couple sold that home

and used the proceeds to purchase approximately nine acres of land on Route 114 in

Peabody.[10]  The title to this real estate was in Decoulos' and Helen's names.[11]

Subsequently, on September 21, 1961, Decoulos created the Willowdale Trust and

named Helen as the sole beneficiary.[12]  He appointed himself as the sole trustee of the

Trust.[13]  Shortly after Decoulos created the Willowdale Trust, he and Helen transferred

the nine acres of land on Route 114 into the Trust for no consideration.[14]  Decoulos

amended the trust on November 22, 1988.[15]  Pursuant to the amended trust, "the trustee

shall have no power to deal in or with any trust property except as directed in writing by

the majority of the beneficiaries."[16]  In September 2006, fifteen months after the

Judgment in this matter entered against him, Decoulos resigned as trustee and drafted

documents that caused his sons, Peter and Paul Decoulos ("Peter" and "Paul") to be

appointed as the co-trustees.[17]  Helen remains the sole beneficiary.[18]  Since Decoulos

created the Trust, Helen has never issued a written directive to Decoulos, Peter or Paul.[19]

Currently, there are two substantial commercial buildings on the Trust property; the first

building has two commercial tenants, Verizon and Mattress Giant, and the second

building is leased by North Shore Bank.[20]  Although the Trustee has not appraised the

value of the Trust property, the City of Peabody, Massachusetts currently assesses the

---

[9] See Stathis Affidavit, Tab H, at pages 101-103.
[10] See Stathis Affidavit, Tab H, at page 102-103.
[11] See Stathis Affidavit, Tab H, at pages 101-103.
[12] See Stathis Affidavit, Tab A.
[13] See Stathis Affidavit, Tab A.
[14] See Stathis Affidavit, Tab H, at page 103.
[15] See Stathis Affidavit, Tab B.
[16] See Stathis Affidavit, Tab B, at page 3, ¶ 2.
[17] See Stathis Affidavit, Tab C; Tab K, at pages 19-20; Tab I, at pages 108-109.
[18] See Stathis Affidavit, Tab I, page 108.
[19] See Stathis Affidavit, Tab I, at pages 104-106.
[20] See Stathis Affidavit, Tab M, at page 83.

Trust property to be worth over $4,000,000.[21]  Additionally, in 2003, the Trust received a

$1,700,000 mortgage from the Danvers Savings Bank, and in 2006, the Trust generated

approximately $300,000 in net income.[22]

     For over forty years, Decolous managed all aspects of the property and treated the

Willowdale Trust property as his own.  Decoulos negotiated the leases and mortgages for

the Willowdale Trust property.[23]  He personally guaranteed a $1,700,000 mortgage that

Willowdale Trust obtained from Danvers Savings Bank.[24] Anne Marie Walters, who is

personally paid by Decoulos and who has worked for him for almost forty years as his

legal secretary, writes almost all checks for Willowdale Trust.[25]

     Decoulos pays numerous expenses, including taxes, of Willowdale Trust property

from his law practice checking account.[26]  He has reimbursed himself for these payments

from the Willowdale Trust property, and had set up this co-mingled accounting system

"because it was much easier."[27]

     Even after Decoulos caused his children to succeed him as trustee, he continued to

manage the Willowdale Trust property and maintain all indicia of ownership.  Peter and

Paul make no decisions concerning the management of the Trust.[28]  For example,

Decoulos still receives all Trust mail, including bank statements, at his law office at 39

Cross Street.[29]  His secretary, Anne Marie Walters, continues to speak with Decoulos and

not the current trustees if she has questions about the Trust property or if there are

---

[21] See Stathis Affidavit ¶ 18.
[22] See Stathis Affidavit, Tab E; Tab H, at pages 91-92; Tab I, at pages 86-87.
[23] See Stathis Affidavit, Tab H, at pages 26-27; 85-87.
[24] See Stathis Affidavit, Tab H, at pages 91-92; Tab I, at pages 86-87.
[25] See Stathis Affidavit, Tab H, at pages 23, 25; Tab L, at pages 14-16.
[26] See Stathis Affidavit, Tab I, at pages 40-43.
[27] See Stathis Affidavit, Tab I, at pages 40-41; see also Tab L, at pages 34-36 (Ann Marie Walters describing prior instances of co-mingling of Willowdale and Decoulos' personal checking account).
[28] See Stathis Affidavit, Tab J, at pages 26-28; Tab K, pages 23-25.
[29] See Stathis Affidavit, Tab H, at pages 27-29.

problems that need to be addressed with the Trust property, such as a leaky roof.[30]  Anne

Marie Walters also continues to direct phone calls regarding the Trust to Decoulos.[31]

Decoulos still holds all financial records and accounts at his law office.[32] Additionally,

Decoulos drafts legal documents for Willowdale Trust and directs Peter and Paul to sign

legal documents affecting the Trust at his office.[33]

    Willowdale Trust property pays for Decoulos' personal expenses—he lives in a

home which is paid for by Willowdale Trust income.[34] Additionally, Decoulos uses a

Capital One credit card to pay for household expenses, including food.[35]  The credit card

is in Helen's name, and Willowdale Trust income is used to pay 100% of the Capital One

charges.[36]

## II. ARGUMENT

    The purpose of a preliminary injunction is to maintain the status quo.  *Costello,*

*Erdlin & Co., Inc. v. Winslow, King, Richards & Co.*, 797 F. Supp. 1054, 1065 (D. Mass.

1992).  Courts analyze a request for a preliminary injunction through application of the

following four well-established factors: (1) the likelihood of success on the merits; (2) the

potential for irreparable harm [to the moving party] if the injunction is denied; (3) the

balance of relevant impositions, i.e. the hardship to the nonmovant if enjoined as

contrasted with the hardship to the movant if no injunction issues; and, (4) the effect (if

any) of the ruling on the public interest. *Esso Standard Oil Co. v. Monroig-Zayas,* 445

F.3d 13, 18 (1st Cir.2006), quoting *Bl(a)ck Tea Soc'y v. City of Boston,* 378 F.3d 8, 11

---

[30] See Stathis Affidavit, Tab H, at page 26; Tab L, at pages 11-13; 19-20.
[31] See Stathis Affidavit, Tab H, at page 26; Tab L, at pages 20-21; Tab J, at page 27.
[32] See Stathis Affidavit, Tab L, at page 28; Tab K, pages 30-31.
[33] See e.g., Stathis Affidavit, Tab K, at page 27-30.
[34] This includes mortgage payments, taxes, home repair, kitchen remodels, etc. See Stathis Affidavit, Tab I, at pages 81-83; Tab H, at page 15.
[35] See Stathis Affidavit, Tab H, at pages 52-53; 58-60.
[36] See Stathis Affidavit, Tab I, at pages 32-33; Tab M, at pages 115-116.

5

(1st Cir.2004).  The party seeking the preliminary injunction bears the burden of

establishing that these four factors weigh in its favor.  *Nieves-Márquez v. Puerto Rico,*

353 F.3d 108, 120 (1st Cir. 2003).  "The sine qua non of this four-part inquiry is

likelihood of success on the merits: if the moving party cannot demonstrate that he is

likely to succeed in his quest, the remaining factors become matters of idle curiosity."

*New Comm. Wireless Servs., Inc. v. SprintCom, Inc.,* 287 F.3d 1, 9 (1st Cir.2002).  In this

case, the factors weigh in the plaintiff's favor.

### A.      The Trustee will likely succeed on the merits of her claims; Decoulos holds an equitable interest in the Willowdale Realty Trust

For over forty years, Decoulos has controlled all aspects of Willowdale Realty

Trust.  He has always ignored the basic provision of the Trust that all action requires a

written directive, he maintains all indicia of ownership of the Trust property, he manages

it, and he treats and develops the property as if it were his own.  Under Massachusetts

law,[37] Decoulos holds an equitable interest in the trust which may be reached and applied

to satisfy the Judgment entered against him.  *See* G.L. c. 214, § 3(7); *In re Tougas*, 338

B.R. 164, 174 (D. Mass. 2006); *New England Merchants National Bank v. Hoss,* 356

Mass. 331, 335 (1969).   The Trustee therefore is likely to prevail on her Reach and

Apply complaint.

 "The clear import of the recent Massachusetts cases is to look at the indicia of

ownership and not the form in which the property is held."  *In re Tougas*, 338 B.R. at

174.  Furthermore, "'[s]everal courts have found that "[w]here the debtor, 'in one

capacity or another' dominates all aspects of the trust to the extent that he exercises

---

[37] Massachusetts case law determines whether the debtor holds an equitable or legal interest in property.
See *In re Tougas*, 338 B.R. 164, 173 (D. Mass. 2006).

absolute dominion and control over the assets, his interest in the trust . . . constitute[s]
property of the estate"" *In re Cowles,* 143 B.R. 5, 7 (D. Mass.1992) (quoting *In re Steffan*,
97 B.R. 741 (N.D.N.Y. 1989) (quoting *In re Gifford*, 93 B.R. 636 (N.D. Ind. 1989))). "It
is excessive obeisance that the form in which property is held to prevent creditors from
reaching property placed in trust . . . [i]t violates public policy for an individual to have
an estate to live on, but not an estate to pay his debts with." *In re Cowles*, 143 B.R. at 9
(quoting *State Street Bank and Trust Co. v. Reiser,* 7 Mass. App. Ct. 633, 639 (1979)).

In *In re Tougas*, 338 B.R. 164, the plaintiff, the trustee in bankruptcy, asked the
court to declare that certain trust property belonged to the debtor and consider it part of
the bankruptcy estate. The court considered whether "the settlor or trustee [was] also a
beneficiary of the trust or whether the debtor treated the trust *res* as his own." *Id.* at 173-
174 (citations omitted). In *Tougas*, the debtor maintained total indicia of ownership of
the trust property. *Id.* The court highlighted that the debtor, like Decoulos, ignored the
provisions of the trust. *Id.* at 175-176. The debtor in *Tougas*, like Decoulos, also used
the trust *res* for living expenses. *Id.* In *Tougas*, the debtor retained the right to amend the
trust in the trust document. In the instant case, Decoulos' ability to amend the Trust,
while not express, was certainly the reality of how he handled the Trust. Additionally, in
*Tougas*, the debtor reported the income from the trust on her individual tax return. In the
instant case, the Trust income is reported on Schedule E to a jointly filed tax return, under
Decoulos' social security number and under the joint names, Nicholas and Helen
Decoulos.[38] In summary, the debtor in *Tougas* was in control of the trust and treated it as
her own, and accordingly, the Court determined that the trust *res* was part of the debtor's
bankruptcy estate. *Id.* at 177. Because of the similarities of *Tougas* and this case, the

---

[38] See Stathis Affidavit, Tab E; Tab F; Tab G; Tab H, at page 4.

7

Court should apply the holding of *Tougas* and conclude that the Willowdale Trust *res* is Decoulos' property.

The Court in *In re Cowles*, 143 B.R. 5 (1992) followed similar reasoning.  The debtor, Cowles, owned a single family home and conveyed the property to a trust, naming his wife and children as the beneficiaries.  *Id.* at 6.  The creditor sought to reach the trust *res* and treat it as part of the bankruptcy estate.  *Id.*  In concluding that the trust *res* was available to satisfy the creditor's claims, the Court considered that Cowles controlled the trust's assets over his lifetime, lived in the family home which was part of the trust, and had the ability to provide for himself with the interest. *Id.* at 9-10.  Those factors are almost identical to the instant case.

The bottom line here is that Decoulos treated the trust property as his own and ignored the most basic provision of the trust—requiring the beneficiary (Helen) to issue all directives in writing.  Like the debtors in *Cowles* and *Tougas*, Decoulos controlled, and continues to control, every aspect of the Willowdale Trust by managing the property, receiving no compensation, and using the money generated from the trust for his own personal benefit.  Decoulos also commingled funds from Willowdale Trust with those from his law practice, and accordingly, it is likely that the Court will reach and apply the assets of the Trust to satisfy the Judgment against him.

## B.     The remaining factors weigh heavily in the Trustee's favor

Here, the Trustee, acting as a representative of the bankruptcy estate, will suffer irreparable harm if the injunction is denied, the defendants will suffer no harm, and the public has no interest in a preliminary injunction in this case.  The debtor's estate in bankruptcy owes significant debts to its creditors.  The Trustee, as a representative of

these creditors, would suffer irreparable harm if unable to collect the substantial

Judgment from Decoulos.  At any time, without a preliminary injunction, the defendants

Helen, Peter and Paul are able to transfer the Trust property, leaving the Trustee unable to

collect the Judgment.  Certainly, the danger of depletion and disappearance of assets

establishes irreparable injury.  *See, e.g.  Fleet National Bank v. Rapid Processing Co.,*

*Inc.*, 643 F. Supp. 1065 (D. Mass. 1986).  However, a preliminary injunction will not

harm the defendants or the Willowdale Trust because the Trustee is only asking the Court

to maintain the status quo and prohibit the defendants from transferring the Trust

property.  Finally, because this is a dispute between two private parties, the issuance or

non-issuance of a preliminary injunction has no bearing on the public interest.

## III. CONCLUSION

Based on the foregoing, this Court should grant the Plaintiff's Motion for

Preliminary Injunction.

Respectfully Submitted

LYNNE F. RILEY,
By her attorneys:

/s/ Michael L. Altman_____
Michael L. Altman, BBO #016800
Kristen Stathis, BBO #657232
Altman Riley Esher LLP
100 Franklin Street
Boston, MA  02110
(617) 399-7300
Stathis@are-law.com

DATE:  June 19, 2008